**Commonwealth v. Ford**

*Howell Rosenberg* and *Joseph P. Murray*, for Commonwealth.

*Daniel M. Preminger, Thomas L. McGill, Jr., Jay S. Gottlieb, Steven Dickstein, Francis X. Nolan, Vincent LaRusso* and *Joseph P. Zawrotny*, for defendants.

SAVITT, *J.*, October 4, 1979—

## STATEMENT OF FACTS

On June 14, 1979, the County Investigating Grand Jury of November 29, 1978, issued indictments against the above-named defendants charging each with three counts of murder, two counts of arson, one count of causing catastrophe and one count of conspiracy. Pursuant to the Investigating Grand Jury Act of November 22, 1978, P.L. 1148, 19 P.S. §265 et seq., this court scheduled a "probable cause hearing" on June 20, 1979.[1] Upon motion of defendants, the matter was continued until July

---

1. On July 20, 1979, Act No. 1979-50 was amended entitling those accused by an investigating grand jury to a preliminary hearing as a matter of right and the probable cause hearing was abolished. In the instant case, the Commonwealth concedes defendants' right to a preliminary hearing although their arrest predates the amendment.

16, 1979. At that time, defendants moved that the court quash the indictments alleging that the grand jury was unconstitutionally convened and the matter was again continued to permit counsel to submit briefs and prepare for oral argument.

On September 11, 1979, oral argument was presented and this opinion follows.

Defendants assert four principal reasons why the indictment should be quashed:

(1) the Investigating Grand Jury Act allows the grand jury to be convened without the showing previously required by decisional law;

(2) the Investigating Grand Jury Act unconstitutionally abridges the power of the judiciary;

(3) the act unconstitutionally revives the indicting grand jury in Philadelphia;

(4) proceeding in a county rather than a multi-county grand jury denies equal protection.

### I. *The Investigating Grand Jury Act Allows Grand Juries To Be Convened Without the Showing Previously Required by Decisional Law*

The Investigating Grand Jury Act of November 22, 1978, P.L. 1148, 19 P.S. §265 et seq., allows grand juries to be convened without the showing previously required by decisional law: McNair's Petition, 324 Pa. 48, 187 Atl. 498 (1936); Com. v. McCloskey, 443 Pa. 117, 277 A. 2d 764, cert. denied 404 U.S. 1000, 92 S.Ct. 560, 30 L.Ed. 2d 552 (1971); In re: January 1974 Phila. Co. Grand Jury Investigation, 458 Pa. 586, 328 A. 2d 485 (1974).

Prior to passage of this recent legislation, the case law imposed strict limitations on the convening of an investigating grand jury. For a grand jury

to be convened the prosecutor was obliged to demonstrate systematic violations of the law and widespread criminal activity affecting the community as a whole and not controllable through normal criminal processess: McNair's Petition, supra.

A more explicit statement of the showing required to convene an investigating grand jury is set forth as follows:

"'(a) [T]he subject matter of the investigation must affect the members of the community as a whole, rather than as individuals; (b) the investigation must be aimed at conditions and not primarily at individuals; (c) the ordinary processes of the law must be inadequate to cope with the problems; (d) the investigation must have a defined scope, be aimed at crimes and supported by information indicating the existence of a system of related crimes or a widespread conspiracy; (e) information as to the crimes must come from direct knowledge or a turstworthy source.'" In re: Jan. 1974 Phila. Co. Grand Jury Inves., supra, 600-01, 328 A. 2d 491-92.

In McCloskey, supra, criminal proceedings were instituted against defendants based on the presentment of an investigating grand jury and defendants were denied the right to a preliminary hearing. Defendants argued that a criminal proceeding cannot be lawfully commenced by an investigating grand jury's presentment to an indicting grand jury without affording them an opportunity for a preliminary hearing.

The Supreme Court of Pennsylvania in McCloskey held that a defendant accused by an investigating grand jury, while not precluded from having a preliminary hearing, was not entitled to such a hearing. In doing so, the court pointed out the strict limitations placed on the prosecutor in

convening a grand jury. The court concluded that the protection afforded by the preliminary hearing is similarly offered by the grand jury and the pre-sentment provides a greater amount of disclosure than does the preliminary hearing. The decision in McCloskey reiterated the principle enunciated in Com. v. O'Brien, 181 Pa. Superior Ct. 382, 124 A. 2d 666 (1956) (appeal dismissed 389 Pa. 109, 132 A. 2d 265 (1957)), that the right to a prelimi-nary hearing is not constitutionally mandated nor available under all circumstances.

The Act of 1978 permits a grand jury to be con-vened upon a showing that "the convening of a county investigating grand jury is necessary be-cause of the existence of criminal activity within the county which can best be fully investigated using the investigative resources of the grand jury." 19 P.S. §267(b).

By the Grand Jury Act of 1978, the legislature removed virtually all the limitations previously placed on the district attorney in convening a grand jury. This legislative change is valid unless there is a constitutional impediment or unless the legisla-ture has abridged the power of the court.

Defendants argued that this legislative change is invalid and unconstitutional and a substantial por-tion of that argument was based on the contention that defendants were denied the right to a prelimi-nary hearing. This argument is moot and without merit since the Commonwealth has agreed to grant defendants a preliminary hearing.

Between the time of defendants' arrest in the in-stant case and September 11, 1979, the date of oral argument, the Grand Jury Act of 1978 was amended entitling those accused by an Investiga-ting Grand Jury to a preliminary hearing as a mat-ter of right. As a result of this amendment and the

Commonwealth's agreement to grant a preliminary hearing, the court assumes for the purposes of this opinion that defendants are entitled to a preliminary hearing.

The contention that legislation which places little restrictions on the district attorney's right to convene a grand jury and simultaneously fails to grant the right to a preliminary hearing is unconstitutional, would indeed merit serious consideration. This is not the circumstance here.

Accordingly, this court holds that the alteration of the decisional standards relating to the right to convene a special investigating grand jury by the Grand Jury Act of 1978, as amended, does not violate the Pennsylvania Constitution.

## II. *The Act Unconstitutionally Abridges the Power of the Judiciary*

The Grand Jury Act of 1978 establishes the procedure for the convening, composition, term and powers of investigating grand juries in Pennsylvania. The procedure so established applies unless inconsistent with court rules promulgated by the Supreme Court or unless constitutionally invalid. No contrary rules have been promulgated—to the contrary, the Supreme Court chose to withdraw inconsistent rules.[2]

Defendants argue that the Investigating Grand Jury Act takes control of the grand jury from the judiciary and places it in the district attorney's of-

---

2. Pa.R.Crim.P. 250 et seq., promulgated June 26, 1978, vacated November 28, 1978, amended and re-promulgated January 4, 1979.

fice. Defendants contend that the Grand Jury Act is unconstitutional since it abridges the power of the judiciary. They aver that the court is a "puppet" of the Commonwealth and that the power has been taken from the court and given to the district attorney.

Section 3 of the Grand Jury Act of 1978 establishes a procedure for the convening of an investigating grand jury and provides that application be made by the district attorney to the president judge for an order directing that an investigating grand jury be formed. The application must state that the convening of the grand jury is necessary, because of the existence of criminal activity which can best be fully investigated by a grand jury.

This section further provides that within ten days of receipt of the application, the president judge shall issue an order granting the request. Refusal to grant an application is appealable to the chief justice or the justice so designated to hear such appeals.

Section 6 deals with the term of the Investigating Grand Jury and provides that the term may be extended for an additional period of six months upon request of the jury to the court and that request for an order granting an extension shall be issued by the court unless it determines that such request is clearly without basis.

Additionally, this section provides that during the grand jury's term, the court may discharge the jury where it determines that it is not conducting proper investigative activity. The discharge order may be appealed to the chief justice or his designee and the grand jury shall continue pending disposition of the appeal.

Section 9 provides for the submission of investigations by the district attorney to the investigating grand jury and sets forth that before submitting an investigation to the grand jury, the district attorney shall submit a notice to the supervising judge alleging that the matter in question should be brought before the grand jury because the investigative resources of the grand jury are necessary for proper investigation.

The power to convene an investigating grand jury is a judicial power, and any encroachment upon the judicial power is offensive to the fundamental scheme of our government: Com. v. Hackney, 117 Pa. Superior Ct. 519, 178 Atl. 417 (1935); Com. v. Sutley, 474 Pa. 256, 378 A. 2d 780, 783 (1977). Specifically, the "legislature cannot dictate to the courts how they shall decide matters coming before them judicially." Com. v. Knox, 172 Pa. Superior Ct. 510, 519, 94 A. 2d 128 (1953); Leahey v. Farrell, 362 Pa. 52, 66 A. 2d 577 (1949).

If the district attorney has the power suggested by defendants and the court is rendered impotent then the constitutionality of the act is indeed questionable.

Fortunately, it is not necessary to confront this issue because, pursuant to the Statutory Construction Act of December 6, 1972, P.L. 1339, sec. 3, 1 Pa.C.S.A. §1922, it is presumed that the legislature does not intend to violate the Pennsylvania Constitution; and this court has the duty to reject such an interpretation of the Act where there is another, fairly reasonable, construction which would sustain the statute's validity: Com. v. MacDonald, 464 Pa. 435, 347 A. 2d 290 (1975), cert. denied 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed. 2d 75 (1975).

Section 3 of the act states that within ten days of receipt of an application to convene a county investigating grand jury, the president judge *shall* issue an order granting the request.

When the word "shall" is used by the legislature to a court, authority to do an act is granted or discretion conferred. "Shall" is not a word that obliterates discretion, and does not have a mandatory thrust: In re Rizzo, 247 Pa. Superior Ct. 13, 17, 371 A. 2d 1013, 1015-1016 (1977); Com. ex rel. Kelley v. Pommer, 330 Pa. 421, 199 Atl. 485 (1938).

Accordingly, this court holds that in the statute here involved the word "shall" must be interpreted as conferring discretion upon the president judge and supervising judge.

Further, had the legislature intended that no discretion be vested in the president judge, the proper remedy for inappropriate judicial action would have been mandamus, not appeal: Kaufman Construction Co. v. Holcomb, 357 Pa. 514, 520, 55 A. 2d 534, 535 (1947); Maxwell v. Farrell School District Board of Directors, 381 Pa. 561, 112 A. 2d 192 (1955); Highway Paving Co. v. Board of Arbitration of Claims, 407 Pa. 528, 531, 180 A. 2d 896, 897-898 (1962); Nicolella v. Trinity Area School District School Board, 444 Pa. 544, 549-51, 281 A. 2d 832, 834-836 (1971).

Moreover, as it is plain that the legislature meant to confer on the president judge discretion with respect to impanelling an investigating grand jury, it is similarly plain that the supervising judge maintains his former control over the investigating grand jury.

The supervising judge has a continuing duty to assure the propriety of a grand jury investigation:

Com. v. Hubbs, 137 Pa. Superior Ct. 229, 8 A. 2d 611 (1939). He must sign all subpoenas: Carabello Appeal, 238 Pa. Superior Ct. 479, 357 A. 2d 628 (1976); Com. v. Columbia Investment Corporation, 457 Pa. 353, 325 A. 2d 289 (1974); rule on motions to quash, id., apprise all witnesses of their rights, and hear all matters which they bring to his attention during the course of their testimony: McCloskey, supra. The supervising judge's inherent power to discharge a grand jury (see United States v. Smyth, 104 F. Supp. 283, 292 (N.D. Calif., 1952), and cases cited therein) is codified by section 6(c) of the act. Where the grand jury files a report, the supervising judge may order it sealed, and if the report is improper, refuse to accept it. Further, in certain cases, he may authorize a right of reply: Section 11 of the act, 19 P.S. §275. Where the grand jury issues a presentment, the supervising judge may refuse to accept it if it is not proper: section 10 of the act, 19 P.S. §274. Because of his continuing duty, the supervising judge exercises discretionary power over the submission of investigations to the grand jury pursuant to section 9 of the act, 19 P.S. §273, identical to that power possessed by the president judge as to impanelling the grand jury.

In short, the ability of the supervising judge to protect the rights of witnesses before the grand jury, and those accused by it, is in no way abridged by the act.

The discretion conferred on the president judge is to require, if he chooses, the district attorney to set forth facts sufficient to justify the conclusion that "the convening of a county investigating grand jury is necessary because of the existence of criminal activity within the county which can best be fully

investigated using the investigative resources of the grand jury," before a petition will be approved. The president judge may require evidence, including "information as to [the existence of] the crimes . . . from direct knowledge or a trustworthy source;" see McNair, supra, which reveals that the allegations being investigated are crimes, not mere improprieties. He may also require a showing of "necessity," that important witnesses or documents will not be provided voluntarily to the district attorney's office, or that witnesses will not come forward unless a protective mantle of secrecy is imposed by the court.

This court, in supervising the Special Investigating Grand Jury of November 29, 1978, regularly requires the district attorney to set forth reasons why the investigative resources of the grand jury are necessary before approving each notice of investigation.

Clearly, the power of the court to supervise and control the grand jury remains potent. Although the standards set forth in the act are not detailed, it is within the authority of the court to add more specificity to the standards by appropriate interpretation.

For the reasons set forth, the court holds that the Grand Jury Act of 1978 does not unconstitutionally abridge the power of the judiciary.

### III. *The Act Unconstitutionally Revives the Indicting Grand Jury*

Defendants also assert that the Investigating Grand Jury Act unconstitutionally permits the investigating grand jury to issue indictments, even in

counties where indicting grand juries have been abolished. Specifically, defendants contend that once a judicial district has petitioned for proceedings by information, and that petition has been approved by the Supreme Court (as is the case in Philadelphia County), the legislature may not thereafter reinstate proceedings by indictment in that judicial district: Pa. Const., Art. I, §10. This contention must be rejected.

Nothing in the Pennsylvania Constitution prohibits a judicial district from proceeding by indictment in some circumstances, and by information in other circumstances.

Significantly, the Investigating Grand Jury Act, which gave to these grand juries the power of indictment, became effective on November 22, 1978. Six days later, on November 28, 1978, the Supreme Court vacated three Rules—Pa.R.Crim.P. 3, 253 and 257—which related to investigating grand jury presentments. On January 4, 1979, the Supreme Court repromulgated these rules, substituting the word "indictment" for the word "presentment." By amending these rules, the Supreme Court acted in accordance with the legislature. Thus both the Supreme Court and the legislature permitted investigating grand juries to issue indictments even in judicial districts which have abolished the indicting grand jury.

Furthermore, the alleged violation would be of a technical nature, and were the indictments quashed on this ground, they could properly be reissued as presentments, which the Act, as amended, now allows. Consequently, defendants have suffered no injury and it would be inappropriate for the court to delay prosecution on the ground asserted.

## IV. *Proceeding by County Investigating Grand Jury Denies the Defendants the Equal Protection of the Laws*

Finally, it is argued that defendants proceeded against pursuant to a county investigating grand jury, rather than by a multi-county grand jury, or by the ordinary mode of procedure, are denied the equal protection of the laws.

Defendants' contention has no merit. Unless the state has created a classification which unevenly distributes benefits or unevenly imposes burdens, there is no denial of equal protection: Com. v. Webster, 462 Pa. 125, 337 A. 2d 914 (1975), cert. denied 423 U.S. 898, 96 S.Ct. 201, 46 L.Ed. 2d 131 (1975).

In Webster, a defendant who had been proceeded against by information rather than by indictment claimed that the difference in treatment of defendants in judicial districts which substituted informations for indictments, violated the equal protection clause. The court, calling attention to the fact that the protections afforded by indicting grand juries were a practical nullity, and to the fact that "the substantial rights of an accused are equally protected regardless of the method used to initiate the proceeding," 462 Pa., at 132, 337 A. 2d, at 918, held that there was no such violation.

This rationale applies here. The Investigating Grand Jury Act merely permits different criminal investigations to proceed in forums having different jurisdictions. The "substantial rights of an accused," as described by Webster, are equal.

Accordingly, defendants' contention is rejected.

For the reasons set forth in this opinion, defendants' motion to quash the indictments is denied.